IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUCIO MUNOZ,<br><br>             Petitioner,<br><br>vs.<br><br>ROB JEFFREYS,<br><br>             Respondent. | 8:21CV344<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Lucio Munoz's ("Munoz" or "Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Filing No. 1. Respondent argues that the petition must be dismissed because Munoz's habeas claims are procedurally defaulted. For the reasons that follow, the Court will deny the relief requested in the petition and dismiss this matter with prejudice.

## I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

**A. Conviction and Sentence**

On November 16, 2017, Munoz was convicted by a jury in the District Court of Scotts Bluff County, Nebraska, of first degree murder and use of a deadly weapon to commit a felony. Filing No. 11-10 at 62. The state district court sentenced Munoz on January 4, 2018, to consecutive prison sentences of life imprisonment for the murder conviction and 20 to 40 years' imprisonment for the use of a weapon conviction. Id. at 75–77. The Court recites the following relevant facts from the Nebraska Supreme Court's direct appeal opinion in State v. Munoz, 927 N.W.2d 25 (Neb. 2019), Filing No. 11-3. See Bucklew v. Luebbers, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

On Friday, December 30, 2016, at approximately 10 p.m., Munoz knocked on Trudy Ziegler's door. He told her that his girlfriend, Melissa May, had been raped that morning by a tenant of the same apartment complex where they all lived. Ziegler told Munoz to call the police, and he did so from her apartment.

Just after 11 p.m., two police officers arrived at the apartment complex. Their body cameras recorded the interaction. Munoz told the officers that May had been raped. He allowed the officers into his apartment, where an intoxicated May was asleep on Munoz's bed. After Munoz woke her, May told the officers that she did not know why they had been called and Munoz told her to "tell them the truth." May did not wish to make a police report. One of the officers told Munoz that when May was sober, she could come talk to the police. Munoz replied that she was not going to do so. He added, "But something's gonna happen, I know."

An upset Munoz returned to Ziegler's apartment and said that May did not want to press charges. He asked, "what do I do now," and Ziegler told him "just love her all the more." At approximately 2 a.m. on December 31, 2016, Munoz called his son, Martin Brady. Munoz told Brady that he "did something . . . bad" and that he wanted to kill himself. Brady's girlfriend called the police to check on Munoz.

The same two officers returned to Munoz's apartment shortly after 3 a.m. Again, their body cameras recorded the interaction. Munoz said that he was feeling bad "because of what happened." He allowed the officers into his apartment. The door to his bedroom was closed, and he told the officers that his girlfriend had gone home. Munoz agreed to go to a hospital to speak with someone. He locked the deadbolt on his apartment door, and one of the officers drove him to the hospital.

At approximately 8 a.m., Brady received a call from a doctor for Munoz "to get out of the . . . hospital." Brady and his girlfriend picked up Munoz and took him to Brady's house. Munoz stayed at Brady's house the rest of the morning, and at some point, arrangements were made for Munoz to leave town. Brady explained that Munoz had talked about seeing family because it had "been awhile" and that Munoz had brothers in Texas and Illinois.

A friend of Munoz agreed to take Munoz to Illinois to visit one of his brothers. The friend asked if Munoz wanted to travel the next day, but Munoz said he wanted a ride as soon as possible. So, the friend testified, they "gassed up, and headed out." According to the friend, Munoz had no luggage or other items and he left Munoz in Illinois with Munoz's brother.

Meanwhile, Ziegler did not see Munoz or May on Saturday, which she said was unusual. On Sunday and Monday, Ziegler knocked on Munoz's door, but there was no answer. On Tuesday, January 3, 2017, Ziegler asked the property manager to check on May. Using a master key to unlock the deadbolt, the property manager entered Munoz's apartment. She opened the bedroom door and discovered May, deceased, on the bed.

An autopsy revealed that May had suffered 37 stab wounds, and the cause of death was determined to be multiple stab wounds. The turquoise sweatshirt on May's body appeared to match her top as depicted on the December 30, 2016, body camera footage. Evidence for a sexual assault kit was collected, and it showed no DNA profile other than that of May.

Munoz's brother in Texas began searching for Munoz due to a concern that "something had happened . . . where he live[s]." After making telephone calls, he

discovered that Munoz was in Illinois. Munoz asked his brother to forgive him, but did not say for what. During later conversations, Munoz "said that he was going to die in prison."

Officers with the Scotts Bluff County sheriff's office flew to Illinois to transport Munoz back to Scotts Bluff County. As they were going through the airport to catch a connecting flight, they heard someone playing a piano and Munoz said "they are playing my death song" and "I'm going to get the death penalty." While waiting for a flight, Munoz asked the other officer questions about Nebraska's death penalty, including "if it was voted back in" and the method of execution.

The State charged Munoz with first degree murder and use of a deadly weapon to commit a felony, and Munoz was convicted after a jury trial and sentenced as stated above.

## B. Direct Appeal

Munoz, with new counsel, filed a direct appeal of his convictions and sentences to the Nebraska Supreme Court. Filing No. 11-1. Munoz asserted on appeal that (1) the State committed prosecutorial misconduct during its opening statement at trial, (2) trial counsel was ineffective for not objecting to the State's opening statement, (3) the trial court committed plain error by allowing witness Martin Brady to invoke his Fifth Amendment privilege in front of the jury in violation of Neb. Rev. Stat. § 27-513, (4) trial counsel was ineffective for failing to demand compliance with § 27-513 with respect to Brady's invocation of the Fifth Amendment, and (5) trial counsel was ineffective for failing to challenge the State's blood spatter evidence under Neb. Rev. Stat. §§ 27-402 and 27-403. Filing No. 11-5 at 7–8.

On May 10, 2019, the Nebraska Supreme Court affirmed Munoz's convictions and sentences in a written opinion, rejecting all five of Munoz's claims. Filing No. 11-3. The court found that (1) the prosecutor's opening statement did not constitute prosecutorial misconduct, (2) trial counsel did not perform deficiently in failing to object to the opening statement, (3) the trial court did not commit plain error by allowing Brady to invoke his Fifth Amendment privilege in front of the jury, (4) Munoz could not demonstrate a reasonable probability that the result of the proceeding would have been different if Brady had invoked the privilege outside of the jury's presence, and (5) trial counsel did not perform deficiently by failing to object to the blood spatter evidence. *Id*. at 6–11. The case was mandated on May 28, 2019. Filing No. 11-1 at 4.

**C. Postconviction Proceedings**

Munoz filed a motion for postconviction relief in the state district court on February 24, 2020, which the court denied without an evidentiary hearing. Filing No. 11-12 at 110–31, 151–56. In his motion, Munoz alleged multiple claims of ineffective assistance of both trial and appellate counsel. *Id*. at 112–29. The state district court found that Munoz's claims of ineffective assistance of trial counsel were procedurally barred because, under Nebraska law, he was required to raise them on direct appeal because he had new counsel. *Id*. at 153–54 (citing *State v. Filholm*, 848 N.W.2d 571, 576 (2014)). Regarding the ineffective assistance of appellate counsel claims, the state district court found that Munoz's allegations were not sufficient to warrant an evidentiary hearing. *Id*. at 154–55.

Munoz appealed, and the Nebraska Supreme Court affirmed the state district court's judgment in a written opinion entered May 21, 2021. *State v. Munoz*, 959 N.W.2d 806 (Neb. 2021), Filing No. 11-4. The Nebraska Supreme Court similarly concluded that

5

Munoz's claims of ineffective assistance of trial counsel were procedurally barred because he was required to raise them on direct appeal. Filing No. 11-4 at 10–11. The court also agreed that Munoz's allegations of ineffective assistance of appellate counsel were insufficient to warrant an evidentiary hearing. *Id*. at 11–15. The mandate issued on June 11, 2021. Filing No. 11-2 at 4. Munoz filed a petition for writ of certiorari, which was denied by the United States Supreme Court on October 18, 2021. *Id*.

### D. Federal Habeas Petition

Munoz filed his habeas petition in this Court on September 2, 2021. Filing No. 1. Munoz's habeas claims were summarized by this Court in its preliminary review of the petition as follows:

| | |
|---|---|
| Claim One: | Trial counsel was ineffective in failing to depose or interview potential witnesses Manuel Trevino and Jolene Condon before trial and in failing to make an "alibi-defense" based on proof that Petitioner was nowhere in the vicinity or area when the victim was murdered. |
| Claim Two: | Appellate counsel rendered ineffective assistance via direct appeal review in violation of the United States Constitution and Article I, §§ 3, 13, and 23 of the Nebraska Constitution. |
| Claim Three: | Petitioner received ineffective assistance of trial counsel when counsel failed to object to jury instruction No. 3 Section 1 in violation of the United States Constitution and Article I, §§ 3, 6, 11, and 13 of the Nebraska Constitution. |

>   Claim Four:    Petitioner was denied due process, a fair trial, and the effective assistance of counsel when trial counsel failed to object to the trial court's failure to properly prepare jury instructions in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 3, 6, 11, and 13 of the Nebraska Constitution.

Filing No. 7 at 1–2.

Respondent filed an answer, Filing No. 12, the state court record, Filing No. 11, and a brief, Filing No. 13.  After being given an extension, *see* Filing No. 15; Filing No. 16, Munoz did not file a brief in response, and this matter is ripe for disposition.

## II.  DISCUSSION

Respondent argues that all of Munoz's habeas claims are procedurally defaulted. Filing No. 13 at 10–16.  Upon review, the Court agrees.

**A.  Applicable Legal Standards**

As set forth in 28 U.S.C. § 2254:

>   (b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>   (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)    (i)    there is an absence of available State corrective process; or
>
>   (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to either the Nebraska Supreme Court directly[1] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. See *Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been

---

[1] The Court notes that where, as here, a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

8

presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. Akins, 410 F.3d at 456 n.1.

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In addition, "[t]he Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue [2016 & Cum. Supp. 2024]), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," but "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." State v. Sims, 761 N.W.2d 527, 533 (Neb. 2009). "[A]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." Id. Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." Hall v. State, 646 N.W.2d 572, 579 (Neb. 2002). See also State v. Thorpe, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."). Furthermore, in 2011, the Nebraska Legislature created a one–year time limit for filing a verified motion for

9

postconviction relief.  *See* Neb. Rev. Stat. § 29–3001(4); *State v. Smith*, 834 N.W.2d 799, 801 (Neb. 2013).

B.  **Claims One, Three, and Four**

In Claims One, Three, and Four, Munoz alleges trial counsel was ineffective in failing to depose certain witnesses, make an "alibi-defense," and object to improper jury instructions.  Filing No. 7 at 1–2.  Because Munoz was represented on direct appeal by different counsel than at trial, Munoz was required to assert any claim of ineffective assistance of trial counsel in his direct appeal.  *State v. Hill*, 905 N.W.2d 668, 684–85 (Neb. 2018) ("[W]here appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.").  However, on direct appeal, Munoz raised only three ineffective assistance of trial counsel claims: that trial counsel was ineffective for not objecting to the State's opening argument, failing to demand compliance with Neb. Rev. Stat. § 27-513 with respect to Brady's invocation of his Fifth Amendment privilege, and failing to challenge the State's blood spatter evidence under the Nebraska Rules of Evidence.  Filing No. 11-5 at 7–8.  The Nebraska Supreme Court rejected all three claims on the merits.  Filing No. 11-3 at 9–11.

As Respondent points out, Munoz does not reassert any of the ineffective assistance of trial counsel claims he raised in his direct appeal.  Rather, Munoz's Claims One, Three, and Four reassert the ineffective assistance of trial counsel claims he raised in his postconviction proceedings.  *See* Filing No. 11-8 at 9–11, 14–17; Filing No. 11-12 at 112–17, 122–24.  Both the state district court and the Nebraska Supreme Court found

that Munoz's ineffective assistance of trial counsel claims were procedurally barred from postconviction review due to Munoz's failure to raise the claims on direct appeal. Filing No. 11-4 at 10–11; Filing No. 11-12 at 153–54. Because Munoz did not raise Claims One, Three, and Four in his direct appeal, and cannot raise them in a successive postconviction motion, these claims are procedurally defaulted.

**C. Claim Two**

In Claim Two, Munoz asserts his appellate counsel rendered ineffective assistance. Though not specified in his petition, the Court assumes Munoz seeks to assert the same ineffective assistance of appellate counsel claims that he raised in his postconviction proceedings.[2] *See* Filing No. 1 at 7–8. In his postconviction motion, Munoz alleged that appellate counsel was ineffective for failing to assign as error on direct appeal (1) the lower court's decision on Munoz's motion in limine and the following claims of trial counsel's ineffectiveness: (2) failure to depose witnesses Trevino and Condon, (3) failure to give notice of and make an "alibi-defense," (4) failure to call an expert witness to refute the State's blood spatter evidence, and (5) failure to move to suppress Munoz's statements. Filing No. 11-12 at 112–20. On appeal from the denial of his postconviction motion, Munoz essentially reasserted the same ineffective assistance of appellate counsel claims that he asserted in his postconviction motion except that he omitted the layered claim regarding trial counsel's failure to suppress his statements and added a layered claim that trial counsel was ineffective in failing to call an expert regarding Munoz's mental stability. *See* Filing No. 11-8 at 8–14. Thus, to the extent Claim Two

---

[2] To the extent Munoz may have intended to raise any additional allegations of appellate counsel's ineffectiveness other than those raised in his postconviction proceedings, such allegations would be procedurally defaulted due to Munoz's failure to raise them in the state courts.

includes Munoz's layered ineffective assistance claim regarding the failure to suppress his statements, such claim is procedurally defaulted as Munoz failed to raise the claim through one complete round of state court review.

With respect to the claims Munoz raised in his postconviction motion and on appeal, the Nebraska Supreme Court ultimately concluded that the state district court properly denied Munoz's claims because the postconviction motion's allegations were insufficient to warrant an evidentiary hearing under Nebraska's postconviction procedural rules. The Court explained its reasoning as follows:

> Munoz makes four general arguments of appellate counsel's ineffectiveness by failing to raise on direct appeal claims of ineffective assistance of trial counsel. These generally correspond to the four stated claims in his motion for postconviction relief.
>
> (a) Alibi and Flight Witnesses
>
> We hold that Munoz' claims regarding the failure to depose or interview potential witnesses Trevino and Condon before trial failed to allege more than conclusions of fact and law and, to the extent the motion presented more specific facts, those facts, if proved, would not constitute an infringement of Munoz' constitutional rights rendering the judgment void or voidable. Thus, the district court did not err in denying the claims without an evidentiary hearing.
>
> Our case law is clear that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.
>
> Munoz' allegations as to Condon's testimony consist entirely of legal conclusions and conclusions of fact without supporting facts. Munoz alleged Condon's testimony "would have presented an rebuttable presumption to the [S]tate's theory of how [Munoz] allegedly murdered the victim" and "would have contradicted the [S]tate's evidence underlining proof of [Munoz'] alibi during the time of the victim's murder." This fails to

satisfy the requirement that the motion include specific allegations regarding the testimony that the witness would have given if called.

Munoz' allegations regarding Trevino's potential testimony are somewhat more specific. In essence, Munoz alleged that Trevino could have testified that in a conversation with Munoz' son, Munoz' son reported to Trevino that Munoz had a "desire to travel out of town during the time the alleged crime supposedly took place." This was alleged to be relevant exculpatory evidence because it pertained to Munoz' "whereabouts during the time the victim was found." It was further alleged that Trevino's testimony was relevant to "the events unfolding that lead to [Munoz'] desire to travel, devoid of covering up, or having a scapegoat." From Munoz' arguments on appeal, it appears that the reference to Munoz' "desire to travel, devoid of covering up" was an assertion that Trevino's testimony would have been relevant to diminish the inference of guilt surrounding his flight to Illinois.

The alleged testimony as to Munoz' "whereabouts" was insufficiently specific to warrant an evidentiary hearing. And, regardless, Munoz' "whereabouts" when the victim was found would not have been exculpatory under the facts of this case, which indicated the victim had been murdered several days before.

Because Munoz failed to allege when the conversation about traveling to Illinois took place—specifically, whether it took place before the murder—the facts alleged are insufficient to demonstrate that, if true, Munoz' convictions were the product of ineffective assistance of counsel. A conversation taking place after the murder, in which Munoz indicated a "desire to travel," would only strengthen the inference of flight.

Moreover, Trevino's potential testimony about such a conversation with Munoz' son would have been inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere. Trevino's testimony about what Munoz' son had said would have been to prove the truth of the matter that Munoz intended to go out of town. As a matter of law, counsel is not ineffective for not attempting to adduce inadmissible testimony.

(b) Expert Witness on Mental Stability

Munoz argues on appeal that the district court erred in dismissing a layered claim concerning trial counsel's alleged ineffectiveness in failing to call an expert witness to testify as to Munoz' mental stability during the time of the victim's death. He does not expand upon this assertion, and thus, it

13

was insufficient because it failed to specifically allege what the testimony of potential expert witnesses would have been if the witness had been called at trial.

Furthermore, this claim does not appear in Munoz' motion for postconviction relief. Appellate courts do not generally consider arguments and theories raised for the first time on appeal. In an appeal from the denial of postconviction relief, we will not consider for the first time on appeal claims that were not raised in the verified motion.

### (c) Expert Witness on Blood Spatters

We also agree with the district court that Munoz failed to allege more than mere conclusions of fact or law without supporting facts in relation to his layered claim that trial counsel was ineffective "by failing to call or interview an 'Expert Witness' to refute the [S]tate's theory alleging the 'blood spattered' evidence was culpable proof of [Munoz'] guilt." Munoz did not indicate whose "evidence DNA" he was referring to, how the exact time of the murder could be established by such an expert, what the professional certainty of the time of the crime would be, or how it might have changed the result of the trial.

### (d) Motion in Limine

Lastly, Munoz argues on appeal that the district court erred in dismissing his claim that appellate counsel was ineffective "by failing to assert as error trial counsel's failure to file a Motion in Limine as asserted in ground two of his Motion for Postconviction Relief." He generally asserts prejudice as a result, but does not describe the evidence he believes should have been the subject of the motion in limine, why it should have been excluded, and how the result at trial would have been different but for its admission.

It does not appear that this allegation was raised in the postconviction motion. In his motion for postconviction relief, Munoz described the ineffective assistance of appellate counsel as not preserving "the challenge of [Munoz'] motion in limine filed in the lower district court, thereby assigning such as error in [Munoz'] brief of appellant, for review." The failure to file a motion in limine is a different assertion than the failure to appeal the denial of a motion in limine made at trial.

In any event, the allegation in the motion for postconviction did not contain any description of the evidence subject to the motion in limine, why the evidence was inadmissible, and how it prejudiced him. We agree with the district court that the allegations did not warrant an evidentiary hearing,

14

> because the postconviction motion alleged no specific statement or evidence that should have been included in the motion in limine.

Filing No. 11-4 at 11–15 (footnotes and headnote numbers omitted).

Essentially, the Nebraska Supreme Court rejected Munoz's ineffective assistance of appellate counsel claims because he failed to sufficiently allege specific facts demonstrating both counsel's deficient performance and prejudice as required by Nebraska pleading rules. See *State v. Starks*, 883 N.W.2d 310, 317 (Neb. 2016) ("[I]n a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable."); *State v. Dragon*, 843 N.W.2d 618, 623 (Neb. 2014) ("If a postconviction motion alleges only conclusions of fact or law, . . . the court is not required to grant an evidentiary hearing."). Therefore, Claim Two is procedurally defaulted pursuant to an independent and adequate state procedural rule, and Munoz cannot raise these same allegations in a successive state postconviction motion. See *Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009) ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement"); *Sing v. Frakes*, No. 8:15CV134, 2016 WL 3248244, at *5 (D. Neb. June 13, 2016) (same); *see also Ildefonso v. Gage*, No. 4:13CV3110, 2016 WL 1092468, at *9 (D. Neb. Mar. 21, 2016), *certificate of appealability denied* (Sept. 15, 2016) ("[T]he Nebraska Supreme Court's decision to refuse to consider claims that alleged only conclusions of fact or law was based on a firmly established state procedural rule[;] . . . in Nebraska, if a postconviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing.").

**D. No Cause and Prejudice or Miscarriage of Justice to Excuse Default**

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Munoz has not shown, let alone argued, that any cause and prejudice exists to excuse the procedural default of his habeas claims, and the Court's independent review of the records reveals none. The Court also concludes, again after careful review of the record, that the miscarriage of justice exception does not apply to excuse the default of Munoz's habeas claims as Munoz has not made any "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Accordingly, Munoz's habeas claims must be dismissed with prejudice. *Armstrong*, 418 F.3d at 926–27 (dismissal with prejudice is appropriate where the ground for dismissal is procedural default).

### III. CERTIFICATE OF APPEALABILITY

"[A] state prisoner seeking a writ of habeas corpus" under § 2254 cannot appeal the denial of his petition without first obtaining a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253); Fed. R. App. P. 22(b). This Court cannot grant such a certificate unless Munoz "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do that, Munoz "must

demonstrate that reasonable jurists would find [this] [C]ourt's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Munoz has not made that showing, and this Court will not issue a certificate of appealability.

    IT IS THEREFORE ORDERED that:

    1.    Munoz's petition, Filing No. 1, is denied and dismissed with prejudice.

    2.    The Court will not issue a certificate of appealability in this matter.

    3.    The Court will enter a separate judgment.

Dated this 27th day of March, 2025.

                                    BY THE COURT:

                                    Joseph F. Bataillon
                                    Senior United States District Judge